IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMA L. MAYNARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:14-cv-00027 |
| v. ) | Judge Sharp / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's "Motion for Judgment on the Record." Docket No. 34. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 36. Plaintiff has filed a Reply. Docket No. 39.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment on the Record" be GRANTED, and that the decision of the Commissioner be REMANDED.

## I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on December 4,

1

2010, with a protective filing date of October 23, 2010, alleging that she had been disabled since September 1, 2010, due to depression, anxiety, panic attacks, social phobia, arthritis, back problems, and post-traumatic stress disorder. *See, e.g.,* Docket No. 30, Attachment ("TR"), pp. 65, 127, 146. Plaintiff's application was denied both initially (TR 65) and upon reconsideration (TR 66). Plaintiff subsequently requested (TR 75) and received (TR 31) a hearing. Plaintiff's hearing was conducted on July 25, 2012, by Administrative Law Judge ("ALJ") James Dixon. TR 31. Plaintiff and Vocational Expert, Dr. Ernest Brewer, appeared and testified. TR 32–64.

On September 25, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 14. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since October 23, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: disorders of the back discogenic and degenerative, disorders of the muscles, ligaments, and fascia. The claimant alleged depression, anxiety, panic attacks, social phobia [*sic*] arthritis, back problems, and post-traumatic stress disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that the claimant can lift and carry (including upward pulling) 50 pounds occasionally and 25 pounds frequently. The claimant can stand/walk

2

and sit (with normal breaks) six out of eight hours. The claimant's ability to push and pull is limited in the upper extremities to frequent. The claimant can occasionally climb ramps/stairs, but no ladders, ropes or scaffolds. The claimant's other postural limitations should be performed occasionally. The claimant can occasionally perform overhead reaching. The claimant's other manipulative limitations are unlimited. The claimant has no visual or communicative limitations. She should avoid concentrated exposure to vibrations and hazards such as machinery, heights, and etc. According to the claimant's testimony, she has limited neck mobility and can occasionally look up/down and side to side. The claimant should have only occasional exposure to pulmonary irritants. The claimant should be able to concentrate and pay attention for two hours given customary breaks and rests. The claimant can have occasional public interaction or one on one interaction with the public.

Medium work is defined as the ability to occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds out of an eight-hour workday. Medium work is defined as the ability to stand and walk six hours and sit six hours out of an eight-hour workday.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on November 5, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work

    experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

  10. The claimant has not been under a disability, as defined in the Social Security Act, since October 23, 2010, the date the application was filed (20 CFR 416.920(g)).

TR 19–25.

On November 7, 2012, Plaintiff timely filed a request for review of the hearing decision. TR 30. On December 31, 2013, the Appeals Council issued a letter declining to review the case (TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors

4

were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

5

his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

> claimant's ability to work by proving the existence of a significant
> number of jobs in the national economy which the claimant could
> perform, given his or her age, experience, education, and residual
> functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon,* 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.,* 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) failing to give good reasons for rejecting the opinion of Plaintiff's treating psychiatrist; and (2) failing to account in his RFC determination for his own finding that Plaintiff had moderate deficiencies of concentration, persistence, and/or pace. Docket No. 35. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Weight Accorded to Plaintiff's Mental Health Treatment Records

Plaintiff argues that the ALJ erred by failing to provide good reasons for rejecting the opinion of her longtime treating psychiatrist, Dr. Viswa B. Durvasula. Docket No. 35 at 3.

Plaintiff notes that Dr. Durvasula had been Plaintiff's treating psychiatrist for approximately six years as of the date of the hearing; that Dr. Durvasula's treatment records from November 2006 through November 2010, and May 2011 through December 2011, were contained in the record; and that Dr. Durvasula had submitted her opinion of Plaintiff's work-related limitations. *Id.* at 3–4, *referencing* TR 348–76, 398, 402. Plaintiff summarizes the limitations found by Dr. Durvasula, and notes that a State agency psychological consultant reviewed the record and confirmed that Plaintiff had "significant (moderate) limitations of concentration, persistence, and pace and, in particular, the ability to maintain attention and concentration for extended periods." *Id.* at 4. Plaintiff further maintains that, "Significantly . . . the Agency did not require Plaintiff to submit to a consultative psychological or psychiatric evaluation." *Id.*

Plaintiff argues that the ALJ's sole reason for rejecting Dr. Durvasula's opinion (that it was not consistent with the medical record as the record does not reveal marked limitations in Plaintiff's ability to perform *physical activities*), is erroneous because Dr. Durvasula did not provide an assessment of Plaintiff's *physical* limitations and because the ALJ's analysis "falls woefully short of what is required under the regulations." *Id.* at 5. Plaintiff additionally argues that the ALJ's according "no weight" to Dr. Durvasula's opinion "is truly a remarkable finding" because, as her treating psychiatrist and a medical specialist, Dr. Durvasula's opinion is due great weight. *Id.* Plaintiff contends that the ALJ is required to give good reasons for rejecting such an opinion, but that the ALJ in the instant action failed to do so. *Id.* at 6. Plaintiff further asserts that the ALJ neither considered the fact that Dr. Durvasula was her longtime treating psychiatrist nor that Dr. Durvasula, as a psychiatrist, was a specialist, nor did the ALJ acknowledge or address Dr. Durvasula's knowledge of Plaintiff's impairments. *Id.* at 7-8. Plaintiff argues,

9

therefore, that the ALJ's weight afforded to the opinion of Dr. Durvasula was not supported by substantial evidence and that this action should be remanded. *Id.*

Defendant responds that the ALJ properly evaluated the opinion of Dr. Durvasula and determined that it was inconsistent with the medical record and thus not due substantial weight. Docket No. 36 at 4. Defendant notes that Plaintiff's primary complaints were physical, rather than mental, such that the fact that the bulk of the ALJ's discussion was of Plaintiff's physical impairments, rather than mental impairments, was appropriate. *Id.* at 6, *referencing* TR 37. Defendant further points out that the ALJ noted that Plaintiff's allegations of mental problems were the result of leading questions at the hearing. *Id., referencing* TR 51. Defendant additionally argues that Dr. Durvasula's opinions conflict with the record, and that Dr. Durvasula's treatment of Plaintiff was situational. *Id.* at 6–7. Defendant asserts that Plaintiff's daily activities appear to be self-restricted, and that the ALJ's consideration of this fact, the psychiatrist's opinion, and the record as a whole support the weight afforded to the opinion of Dr. Durvasula. *Id.* at 8–9.

Plaintiff replies that Defendant failed to address the assertion that the ALJ's explanation for rejecting the opinion of Dr. Durvasula consisted of only a general, unexplained finding that the opinion was inconsistent with the record. Docket No. 39, p. 2. Plaintiff asserts that Defendant "misleadingly" suggests that the ALJ's explanation of the weight given to Dr. Durvasula's opinion was sufficient under Sixth Circuit precedent. *Id.* Plaintiff further notes that Defendant did not address Dr. Durvasula's medical specialty, treatment relationship, or lengthy treatment history with Plaintiff and avoided discussing the requirement to give the opinion of treating physicians with reasonable knowledge of Plaintiff's impairments controlling weight. *Id.*

10

Plaintiff alleges that Defendant's arguments are unsupported by case law, and thus do not support the ALJ's failure to discuss Dr. Durvasula's opinion as required by regulations. *Id.* at 4.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her

area of specialty than to the opinion of a source who is not a specialist.
. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

12

> treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

In the instant action, regarding Plaintiff's mental health treatment records, the ALJ stated only that, "the record did not reveal that the claimant received significant psychiatric treatment." TR 22.[3] There is no indication in the ALJ's decision that he was aware either that Plaintiff received nearly six years of mental health treatment, or that those treatment records were part of the evidentiary record before him.

The ALJ discussed the opinion of treating psychiatrist Dr. Durvasula as follows:

> A medical resource statement dated December 8, 2011 from Viswa Durvasula, M.D., revealed marked limitations in understanding, carrying out, and remembering detailed instructions. The claimant had marked limitations responding appropriately to normal work pressures in a usual work setting, sustaining an ordinary routine without special supervision, performing at a consistent pace without an unreasonable number, and length of rest periods (Exhibit 17F).
>
> The undersigned does not grant any weight to the medical source statement as it is not consistent with the medical record. The record des [*sic*] not reveal marked limitations in her ability to perform physical activities.

---

[3] The ALJ also noted Plaintiff's report of mental health treatment, stating:

> The claimant alleged that she has received mental health treatment since she was in her 20s. The claimant alleged that she had a social phobia and withdrew from everything, but the medical record revealed that she attended church, drives, visited with friends and family, and talked on the phone. Moreover, after receiving leading questions from counsel, the claimant stated that she experiences panic attacks with anxiety and other symptomotology.

TR 22.

13

TR 23, *citing* TR 428–31.

The ALJ neither acknowledges that Dr. Durvasula was Plaintiff's treating psychiatrist, nor that Dr. Durvasula was a specialist. As noted above, the record contains Dr. Durvasula's psychiatric treatment records of Plaintiff from November 10, 2006 until December 3, 2011. TR 352–76, 412–13, 426–27, 493–95. Because the ALJ does not address or even reference these treatment records and it is unclear from the ALJ's articulated rationale whether the ALJ was aware of or considered these treatment records, the undersigned cannot determine whether the ALJ was aware of, or considered, these treatment records. Accordingly, further proceedings are necessary to fully evaluate these treatment records with the evidence of record as a whole.

The Sixth Circuit has held that remand was required despite the existence of substantial evidence to support the ALJ's decision where the ALJ might have reached a different decision had he not misconstrued certain evidence or overlooked other evidence. *Uforma/Shelby Business Forms v. N.L.R.B.*, 111 F.3d 1284, 1292-1293 (6th Cir. 1997). Because the undersigned cannot determine with certainty that the ALJ was aware of or considered Plaintiff's lengthy mental health treatment records, the undersigned recommends that this action be REMANDED for further consideration of this matter.[4]

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment on the Record" be GRANTED, and that the decision of the Commissioner be REMANDED.

---

[4] Because the undersigned recommends that this action be remanded, the undersigned will not analyze Plaintiff's remaining statement of error.

14

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge